John H. Masterton, Appellant, *v.* James Boyce, Respondent.

*Supreme Court, First Department, General Term, May 24,* 1889.

1. *Appeal. Findings of fact.*—In determining whether the findings of facts of a referee are against the weight of evidence, it is necessary for the general term to examine all the evidence in the case, in order to see whether such a preponderance exists in favor of the appellant, as will call upon the court to reverse the conclusions of the referee, who had the witnesses before him and can best judge as to the amount of credence to be given to each witness.

2. *Same.*—A finding of a referee cannot be set aside upon the ground of probabilities; the evidence must disclose a reasonable certainty of error in the court below, before a result upon a question of fact can be disturbed. It is not sufficient to justify such action that, if the case had been originally submitted to the appellate court for decision upon the record, it would have come to a different conclusion.

3. *Evidence. Parol.*—An agreement entered into, in good faith, for the purpose of defining and fixing the relations between the parties, where it does define and fix them, expresses the true relations of the parties, and the previous negotiations and relations of the parties are immaterial.

4. *Same.*—Loose expressions in letters cannot change the exact and clear language of agreements.

5. *Witnesses. Attorney.*—Where the privilege has been waived, the testimony of counsel in the action, is competent.

6. *Same. Previous statements.*—The declarations of a witness, made before or after trial, is competent to impeach his testimony.

Appeal from a judgment entered upon the report of a referee, dismissing the complaint.

*Michael H. Cordozo,* for appellant.

*William G. Wilson,* for respondent.

Van Brunt, P. J.—This action was brought to recover

damages sustained by the breach of an alleged warranty of the defendant, made upon the sale of certain shares of stock of the Maryland Union Coal Company to the plaintiff. The answer of the defendant was substantially a general denial.

The plaintiff claimed to maintain his cause of action by proof tending to show that he bought the stock in question from one White, who made certain representations and warranties in respect to the property owned by the company, which representations were false, and which warranties were broken, and that said White, in making these sales of stock and in making these representations and warranties, although ostensibly acting for himself, was, in reality, the agent of the defendant, and authorized to make the representation and warranties upon the sale of this stock, which he did.

The defendant gave proof tending to show that White was in no respect his agent, and had no authority to make any representations or warranties on his behalf.

The referee who tried this case, upon this conflict of testimony, found that White was not the agent of the defendant in the sale of this stock, but that the relation between the defendant and White was that of vendor and vendee, and, therefore, the defendant was not liable to the plaintiff for any misrepresentations made by White upon the sale of the stock, nor for the breach of any warranty given by White at the time of such sale. Notwithstanding the magnitude of the amount involved in these litigations (there being three other actions of a similar nature tried at the same time), the referee did not think it worth his while to write any opinions by which we can judge as to what weight he thought proper to give to the different portions of the conflicting evidence offered in the trial, or as to what impression the demeanor of the different witnesses who were examined before him made upon his mind; and we are left to consider the main question presented upon this

appeal, without that assistance which is so important in order that the appellate court may be, in some respects, placed in the same position as that occupied by the court below, in determining whether the facts found are totally unsustained by evidence, or whether they are against the weight of evidence.

The main question presented upon this appeal is whether the findings of fact of the referee are against the weight of evidence. In the determination of this question it has been necessary to examine all the evidence in the case in order that we might see whether there was such a preponderance of evidence in favor of the plaintiff as would call upon this court to reverse the conclusion of the referee who had had the witnesses before him, and who could best judge as to the amount of credence to be given to each.

It is not considered necessary in stating the conclusion at which we have arrived to review at length the testimony produced upon the trial, but a general statement of the considerations which have induced this result seems to us to be sufficient.

It seems to be established in this case that the plaintiff was induced to buy the stock in question because of representations of White, and that he dealt with White supposing him to be the principal, and therefore, unless it is established by evidence which should have been satisfactory to the referee that White was acting as agent of the defendant, the conclusion arrived at by him is correct.

On the 22d day of November, 1879, the defendants, Boyce and White, entered into an agreement in respect to the sale of the stock in question upon the construction of which the rights of the parties to the action largely depend.

While it may be true that the plaintiff may not be precluded by this agreement from showing the true state of the relations existing between the defendant and White, yet if this agreement was entered into in good faith, for the purpose of defining and fixing those relations, and such agree-

ment does define and fix those relations, then it is entirely immaterial what the previous negotiations may have been, or what the previous relations of the parties may have been ; their rights and liabilities in respect to themselves and to others are fixed by the terms of the agreement. In such case the agreement expresses the true relation of the parties to it, and this is the only question to be determined.

It is claimed by the appellant that by the transactions be-ween the parties prior to the signing of this agreement, an agency had been created between them, and that this agreement does not contain the whole understanding and agreement between the parties to it, but only a part of it, and was really nothing but a detail in the execution of the agency conferred by Boyce upon White for the sale of the stock ; and in support of this contention we are referred to the opinion of Mr. Justice DANIELS rendered upon a prior appeal in this case, in which he says : " While these letters do not in terms establish the agency, many statements are contained in them, rendering it probable that such was in fact the relation existing between these two persons."

This expression of opinion not only does not support the position of the appellant, but it is fatal to his contention when we come to consider the condition of the case when it was before this court on appeal before. The previous appeal was from a judgment entered upon the verdict of a jury against the defendant, and it was undoubtedly urged by the then appellant that there was no evidence to support the verdict of the jury, in that not only the agreement did not establish an agency, but the letters themselves did not even tend in that direction, and, therefore, the verdict should be set aside.

If the contents of the letters were capable of two con-structions, or different inferences could be drawn there-from, as the learned judge seemed to think, then the jury, having drawn one inference, such conclusion must prevail, even though the appellate court may think it erroneous.

But, suppose a different conclusion has been reached in the court below, can a verdict, or a finding of a referee, be set aside upon the ground of probabilities? Must not the evidence disclose a reasonable certainty of error in the court below, before a result upon a question of fact can be disturbed? We think this is the rule. We imagine that if the verdict of the jury upon the previous trial of the case has been for the defendant, and the present appellant had been urging that the verdict of the jury was against the weight of evidence, and should, upon that ground, be set aside, the learned judge would have answered the argument somewhat in this wise:

" As those letters do not, in terms, establish the agency, although many statements are contained in them rendering it probable that such was, in fact, the relation existing between these two persons, and as a different inference might be drawn therefrom, it was exclusively the province of the jury to determine which was correct, and, although we might have come to a different conclusion, we cannot disturb their determination."

We are asked upon the present appeal to set aside the finding of the referee upon this point. This we should not do, unless we are satisfied that error has been committed, and it is not sufficient to justify such action that, if the case had been originally submitted to us for decision upon the record, as it now is, we would have come to a different conclusion.

The referee has had the benefit of hearing the witnesses give their evidence, which is of incalculable advantage in arriving at the truth where such evidence is conflicting, and his finding upon a question of fact should not be interfered with, unless there is a reasonably plain preponderance of evidence against it.

An examination of the correspondence prior to the execution of the agreement of November 22, 1879, shows that nothing had been agreed upon definitely between the

14

parties. This correspondence was merely tentative, and the evidence justifies the referee in finding that the parties met together with their counsel on the 22d of November, 1879, for the purpose of definitely settling what the terms of their agreement should be, and reducing the same to writing, and it was done.

There is no pretense that there was any intention of concealing anything, and the origin of the paper, according to the testimony of Mr. White himself, arose from his desire to know beyond doubt what he could depend upon, and it was for this purpose that the agreement was executed. The terms of the agreement, therefore, so far as it fixed the relations of these parties, must control, and cannot be varied by expressions contained in correspondence preceding the agreement, which resulted in nothing, and because of which want of result the written agreement was called into existence.

When we come to consider the terms of this agreement, its provisions seem to be sufficiently definite and its terms reasonably certain.

But it is claimed that by the agreement White did not obligate himself in any way to take and pay for any of this stock, and therefore the relations between the defendants could not be that of vendor and vendee.

It is true that White did not obligate himself to buy and pay for a share of stock, but it did secure White so that the fruits of his labors, if successful, could not be taken away from him. The defendant, by this agreement, obligated himself to deliver to White certain shares of stock if paid for at a certain price named within given periods. What White did with the stock after its receipt by him was no business of his. At what price he sold it was none of his concern. The defendant agreed to take a given price, and when White tendered him that price he was bound to deliver the stock to him.

It is true that the agreement was only an option in favor

of White, but when White exercised any part of this option, and stock was delivered pursuant thereto, he took it as purchaser, just as though he had bought; no option existing. And it may be that the defendant agreed to allow to White concessions upon the price named in the agreement, but this fact did not alter the relations of the parties. The defendant knew that White did not intend to acquire this stock for himself, but that he intended to sell it to others, and because of this fact, and because of the expenses that White would be put to in placing this stock, he may have agreed to make such concessions; but this did not constitute White the agent of the defendant, nor did it make White's transactions his, and it seems to us that if, upon this proof, the defendant had attempted to hold any of the subscribers to the stock procured by White upon their subscriptions, and had brought suit to recover the same, the subscriber, upon the proof now before the court, could have successfully claimed that he had made no contract with the defendant.

The subsequent agreement of March 3, 1880, in no respect changed the relation of the parties to the November agreement. It simply extended the November agreement with certain modifications therein named, and these modifications seem to strongly sustain the view which the referee has taken of the relations of the defendant and White.

The loose expressions of letters in which profits are spoken of as commissions, cannot change the exact and clear language of agreements deliberately entered into and made for the very purpose of fixing the rights of the parties, and which it is not pretended were entered into for any other purpose.

Upon an examination of the whole of the evidence, we can see no sufficient reason for disturbing the finding of the referee as to the facts in the case.

It now becomes necessary to consider some of the excep-

tions taken to the admissibility of evidence, and which are called to our notice.

Objection was taken to the admission of letters showing transactions between White and the defendant, after White had sold stock to the plaintiff, and which it is claimed were inconsistent with White's claim that he was the agent of the defendant. It was competent to contradict the evidence of White by declarations made by White either in writing or by parol at any time, and which were inconsistent with his evidence. The mere fact that the plaintiff had trusted White, and bought stock of him, did not prevent the defendant when sued, because of White's alleged fraud, and which White attempted to fasten upon him by his own evidence, from showing that White had made declarations inconsistent with his testimony, even if such declarations were made upon the very day of the trial, or upon the trial itself. One of the most familiar methods of impeaching a witness is to show acts and declarations inconsistent with his evidence given upon the trial, and the fact that the witness is not a party to the action in no way impairs the availability of such impeaching evidence. Such evidence in no way impaired any right acquired by the plaintiff, but tended to show that Mr. White had, at the time of the trial, somewhat changed the views which he at one time entertained of the relations existing between himself and the defendant.

The receipt of the prospectus of the coal company was no error, as it was part of the transaction between the defendant and White.

The objection to the evidence of Messrs. Bush & Howitz cannot be sustained upon the ground now claimed, as no objection was made to the form of the question.

The objection to Mr. Howitz's testimony, that he was defendant's counsel, and, therefore, his evidence was incompetent, cannot be sustained, as the defendant himself put

the questions by his counsel, and thus clearly waived the privilege.

There are no other exceptions which require special mention.

The judgment should be affirmed, with costs.

MACOMBER and BARTLETT, JJ., concur.